Cateon, J.
delivered the opinion of the Court. In the consideration of the legal questions arising upon the proceedings and facts in this cause, the attention of the Court has been principally directed to two.
First. Did the Legislature intend, by the Act of 1821, ch. 14, to authorize the Circuit Court to re-try the issue of fact by a jury ? This Court is of opinion that the intention of the Legislature was to give power to the Circuit Court to bring up the whole cause by a writ of certiorari to that Court, and either to quash the proceedings for good cause or to order another trial of the issue of fact.
Secondly. Taking for true, and as upon demurrer to evidence, all the proofs introduced by the plaintiff Lane to sustain the allegations in the complaint and process charging the offence, are there any facts proven that warranted the jury in finding Marshall guilty of the charges, or any of them, alleged against him.
He is charged in the words of the Act, in the disjunctive, with all the offences enumerated in the Statute. Without giving any opinion whether the charges in the complaint and process are well founded, we will proceed to examine whether the evidence, by any reasonable inference, could have authorized a verdict of conviction.
From the proofs, the defendant, Marshall, could not have been guilty of a forcible entry or forcible detainer within the meaning of the second section of the Act; because, to have been so, he must have entered into the possession of the premises, when actually adversely holden by Lane ; whereas Lane never has had the possession of the land, from anything appearing in the record. The object of the writ of forcible entry, according to the second section of the Act, is to keep him in possession who first lawfully obtained [259] the same, and, all considerations of title aside, to restore such possession, if it be forcibly taken or withholden by one entering upon .such actual previous possessor.
It is pretty manifest that the defendant, Marshall, was found guilty of a supposed violation of the fifth section of the Act; the jury having deemed him in possession under John Hickey, who, it was apprehended, was the tenant of Lane. It must be remarked that the fifth section of the Act of 1821 introduces a new feature in this mode of proceeding, and presents cases not- provided for by any of the British statutes for the operation of the writ of forcible entry and detainer. To the new cases alone, described in the fifth section, can the remedy be applied. What are these cases? “ If,” says the Statute, “ any tenant for a term of life or lives, year or years, shall *580 wilfully, and without force, hold over against the remainder man or landlord the lands possessed after the expiration of the estate for life, or the term, and after demand made and notice in writing given to deliver the possession to the remainder man or landlord, then such tenant shall be guilty of an unlawful detainer within the Act, and subject to he turned off by the writ of forcible detainer ; and all those claiming by any means under such tenants for lives, or years, shall, in reference to the remainder man or landlord, be deemed in no better situation than those under whom they claim.
To ascertain, then, the character of the possession of Marshall, we must look to that. of John Hickey under whom he claimed, and see if Hickey, had he continued there, would have been subject to be turned off by the writ of forcible detainer. Was Hickey a tenant for years within the meaning of the Act ? We take the Act to contemplate a case of tenancy ; when A rents or leases to B by a contract for a definite term of time, by virtue of which contract B takes the possession, or holds it, if already in possession of the premises, to the end of the term, and afterwards holds over wilfully, and in violation of his contract, and contrary to the wish of the landlord, the possession thus acquired ; upon the landlord’s demanding the possession to be restored to him, giving the tenant, holding [260] over, notice to quit, and a refusal to comply on the part of the tenant, the writ of forcible de-tainer may be brought by the landlord to turn the tenant off. Did the above-described relation of landlord and tenant exist between Lane and Hickey ? The proposition need only be stated to meet with an answer in the negative. Thez-e was between them no contract for a lease, and no definite term of tenancy, even did Hickey ever recognize the superior right to the possession in Lane, which is doubtful.
The fifth section of the Statute declares a new offence, and creates a new remedy, and vests its exercise in an inferior tribunal, in which jurisdiction can only arise when the facts have occurred which the Act has pointed out; and the steps to obtain redress, on the part of the landlord, have also been taken pursuant to the Statute. One of these, and a very important one, is a demand of the possession and a written notice to deliver it to the landlord by the tenant or any one claiming under him. No such written notice was given to defendant, Marshall; until which was done, even had he been a sub-tenant, strictly within the meaning of the Act, no jurisdiction vested in the justices to turn him off by the writ of forcible detainer. For want of proof, therefore, on the trial below, of the fact of tenancy by contract for a definite term, and for want of proof that a demand was made and a notice in writing given to the defendant, Marshall, to deliver the possession in controversy to the plaintiff, Lane, this Court reverses the judgment of the Circuit Court, refusing to grant a new trial, and remands the cause to that Court, where it may again be submitted to a jury.
Judgment reversed.